UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| DR. DAN GIURCA, | |
| Plaintiff, | |
| - against - | 19 Civ. 1096 (LLS) |
| ORANGE REGIONAL MEDICAL CENTER, GARNET HEALTH f/k/a Greater Hudson Valley Health System, JERRY DUNLAVEY, DR. ULRICK VIEUX, and DR. GERARD GALARNEAU, | MEMORANDUM & ORDER |
| Defendants. | |

Plaintiff Dr. Dan Giurca brought this action against defendants alleging retaliation in violation of the federal False Claims Act, New York State False Claims Act, and New York Labor Law § 741; defamation; tortious interference with contractual relations; conversion; and breach of contract. Defendants move to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

The following facts are as alleged in the Second Amended Complaint ("SAC") (Dkt. No. 32).

Defendant Garnet Health is a health care provider in Hudson Valley, New York. Defendant Orange Regional Medical Center ("ORMC") is a hospital in Orange County, New York.

Plaintiff Dr. Dan Giurca began working for Garnet Health as

-1-

an Attending Psychiatrist at ORMC on January 6, 2017.

Defendant Dr. Gerard Galarneau is the President of Garnet Health. Defendant Jerry Dunlavey is the Vice President and Executive Director of Garnet Health and was Dr. Giurca's administrative supervisor. Defendant Dr. Ulrick Vieux is ORMC's Chief of Psychiatry and residency program director.

During his employment, Dr. Giurca was the Consultation-Liaison Psychiatry Director and was required to manage patients in the psychiatric unit, supervise residents, and teach resident classes. Those responsibilities were the equivalent of "the work of at least two doctors," but Dr. Giurca was not paid compensation for the additional work. SAC ¶ 29. He complained that the workload was a breach of his employment contract to Mr. Dunlavey on or about March 22, 2017, and to Dr. Rojas, Chief of the Behavioral Health Unit, on April 28, 2017 and May 5, 2017. Dr. Giurca continued to complain repeatedly about the breach of contract in August and September of 2018.

Dr. Giurca also complained of instances of patient mistreatment by another doctor, Dr. Quazi Al-Tariq. Dr. Giurca reported to Dr. Rojas that Dr. Al-Tariq wrote "bare" and insufficient medical notations that did not adequately state his evaluations of and plans of action for patients, such as a May 17, 2017 notation stating "Schizoaffective Dis[order] Reevaluate at am." Id. ¶ 33 (alteration in original).

-2-

On June 16, 2017, Dr. Giurca reported to Dr. Rojas that Dr. Al-Tariq told a veteran patient with post-traumatic stress disorder to "snap out of it."

On March 17, 2018, Dr. Giurca filed a complaint with the New York State Office of Mental Health ("NYS OMH") stating that Dr. Al-Tariq exhibited a pattern of compromising patient safety by failing to timely write patient notes, making the "snap out of it" comment, saying "but you have money for food" to a patient who could not afford medication, failing to respond for several hours when he was on call in the emergency room, and discharging a suicidal patient who was scheduled for involuntary psychiatric admission.

On May 16, 2018, Dr. Giurca made a second complaint to the NYS OMH, reporting that Dr. Al-Tariq routinely arrived two hours late for his shifts, slept at home when he should have been at the hospital, and did not answer the telephone for hours. Dr. Giurca also told the NYS OMH that ORMC's hospital management and head of the psychiatry unit tolerated Dr. Al-Tariq's behavior despite multiple complaints.

On June 8, 2018, Dr. Giurca complained a third time to the NYS OMH that Dr. Al-Tariq discharged a patient who said she wanted to commit suicide by taking pills, and that Dr. Al-Tariq told the patient that "even if she takes all her pills, it would not kill her." Dr. Giurca also stated again that Dr. Al-Tariq

was not in the hospital and did not answer calls during his shifts.

On or about October 4, 2018, Dr. Giurca was terminated without cause and barred from entering the hospital.

**DISCUSSION**

On a motion to dismiss under Rule 12(b)(6), the court accepts "all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

False Claims Act Claims

Dr. Giurca alleges that ORMC and Garnet Health retaliated against him in violation of the False Claims Act, 31 U.S.C. § 3730(h), for reporting defendants' conduct that "resulted in patient harm and abuse and defrauded the Medicaid and Medicare Programs as well as other federally and state-funded programs." SAC ¶ 1.

-4-

"The False Claims Act ('FCA') prohibits persons from presenting false or fraudulent claims to the government for payment and contains a whistleblower provision intended to encourage those employees with knowledge of such fraud to come forward." Moor-Jankowski v. Bd. of Trustees of New York Univ., No. 96 Civ. 5997 (JFK), 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998).

"To sustain an action under § 3730(h), a plaintiff must prove (1) that he engaged in conduct protected under the statute, (2) that defendants were aware of his conduct, and (3) that he was terminated in retaliation for his conduct." U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ., 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).

The "term 'protected conduct' as it applies to the first prong is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions . . . . [T]he plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government." Moor-Jankowski, 1998 WL 474084, at *10 (omission and alteration in original) (citation and internal quotation marks omitted).

Dr. Giurca claims that defendants defrauded Medicaid, Medicare, and other government-funded programs by "submitting

bills for low quality and worthless services (i.e., insurance fraud)" but does not allege specific facts supporting that claim. SAC ¶¶ 39. First, he alleges that Dr. Al-Tariq's bare and inadequate patient notations were insufficient "to seek reimbursement for services not rendered or worthless services" and "lacked the elements for proper coding and for seeking reimbursement." Id. ¶ 33. However, Dr. Giurca does not allege that any medical services related to those notations was billed (fraudulently or not) to Medicare, Medicaid, or any other government-funded program.

Second, Dr. Giurca alleges that Dr. Al-Tariq's "snap out of it" comment to the veteran patient with post-traumatic stress disorder was "worthless," "abusive and harmful, and should not have been billed to an insurer," and that "any billing to Champus, Tricare or other military health insurance was fraudulent." Id. ¶¶ 35-36. Again, however, plaintiff does not specify that Dr. Al-Tariq's treatment of the patient was billed to Champus, Tricare, or any other military or government health insurance program.

Additionally, Dr. Giurca does not adequately allege that he engaged in protected conduct because he did not make a complaint directed at exposing a fraud upon the government. Each of his complaints to Dr. Rojas and the NYS OMH concerned either his workload, Dr. Al-Tariq's pattern of compromising patient safety,

or ORMC's toleration of Dr. Al-Tariq's conduct. Dr. Giurca did not report to anyone that defendants engaged in billing practices that defrauded the government. See Adiram v. Catholic Guardian Servs., No. 13 Civ. 6235 (SLT), 2015 WL 5706935, at *5 (E.D.N.Y. Sept. 28, 2015) (dismissing False Claims Act retaliation claim because "Plaintiffs were apparently motivated by concerns about the health and safety of their residents, not by financial fraud" and because their allegations that defendant "submitted invoices to the federal and New York State governments for payment for services that were not actually provided to Defendant's residents" are "conclusory" and "do not support an inference that Plaintiffs were engaged in any conduct in furtherance of an action under [the FCA] or other efforts to stop a violation of the FCA") (alteration in original) (citation and internal quotation marks omitted).

Plaintiff does not seek leave to replead, and his False Claims Act claim is dismissed with prejudice.[1]

### New York State Law Claims

In addition to his False Claims Act claim, Dr. Giurca

---

[1] Plaintiff has already amended the complaint twice. Defendants' motion to dismiss the first amended complaint set forth the same deficiencies in the False Claims Act allegations. Plaintiff was thus on notice of the defects and had an opportunity to cure them in his second amended complaint, but did not do so. Plaintiff is not given leave to amend for a third time, which is unlikely to be productive. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.").

alleges that defendants retaliated against him in violation of the New York State False Claims Act and New York Labor Law § 741, defamed him, interfered with his relationship with a new potential employer, converted his research data property, and breached his employment agreement.

The federal law claim in this case being dismissed, there is no satisfactory basis for the exercise of supplemental jurisdiction over the state law claims, and I decline to do so. 28 U.S.C. § 1367(c)(3) (district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction"); Bridgeman Art Library, Ltd. v. Corel Corp., 25 F. Supp. 2d 421, 431 (S.D.N.Y. 1998) ("When, as here, the federal claim is dismissed early in the litigation process, the presumption to decline jurisdiction is strong.") (citation and internal quotation marks omitted). The New York State courts may find merit in the remaining claims, which are best left to them.

**CONCLUSION**

Defendants' motion to dismiss the Second Amended Complaint (Dkt. No. 33) is granted.

So ordered.

Dated: New York, New York
December 3, 2019

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.